UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at PIKEVILLE**

BILLIE J. GAMBLE, )
 )
　Plaintiff, ) Action No. 7:13-CV-62-JMH
 )
v. )
 ) **MEMORANDUM OPINION AND**
CAROLYN W. COLVIN ) **ORDER**
COMMISSIONER OF SOCIAL )
SECURITY, )
 )
　Defendant. )

\*\*　\*\*　\*\*　\*\*　\*\*

This matter is before the Court on cross motions for summary judgment [DE 10 and 11][1] on Plaintiff's appeal of the Commissioner's denial of his application for Supplemental Security Income. This matter is ripe for review. The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant Defendant's motion.

## I. Factual and Procedural Background

Plaintiff Billie Gamble filed an application for Supplemental Security Income (SSI) on September 3, 2010, alleging disability as of July 1, 2010. (Tr. 12). After the agency denied Gamble's application at the initial and

---

[1] These are not traditional Rule 56 cross motions for summary judgment. Rather, they are procedural devices used by the Court to obtain the views of the parties regarding the sufficiency of the evidence contained in the administrative record developed before the Commissioner.

1

reconsideration levels (Tr. 12), the Administrative Law Judge, Jerry Meade, held a hearing on October 27, 2011. (Tr. 12). On November 25, 2011, the ALJ issued a hearing decision denying Gamble's claim. (Tr. 12—22). The Appeals Council denied Gamble's Request for Review (Tr. 1-5). The Commissioner's final decision is now subject to review pursuant to 42 U.S.C. § 405 (g).

Gamble was 50 years old at the time of the administrative hearing. (Tr. 177.) Gamble completed 7th grade. (Tr. 211—22). He did not attend special education classes. (Tr. 211—22). He testified that he cannot read or write, aside from writing his name, and would not be able to read a newspaper. (Tr. 37—38). In the past, he worked as a carpenter. (Tr. 212). Gamble alleges that his vision in his left eye is impaired due to surgery, claiming that it "went out." (Tr. 31—32). He must keep his eye shut because light bothers it and fluid drains from it. (TR. 31—32). He also suffers from headaches, anxiety and depression. (Tr. 33). He testified that he does not go near people often and he suffers from crying spells every day. (Tr. 33).

Additionally, Gamble suffers from back pain at or around his belt line. (Tr. 33). He reports breaking his back in a car accident twenty-six years earlier and

2

suffering from back pain from that date forward, although he continued working as a carpenter after the car accident. Gamble testified that he can sit for about an hour and a half at a time, and that he can stand for approximately half an hour. (Tr. 34). He will lie down once or twice during the day. (Tr. 34—35). Back pain also interferes with Gamble's sleep, as well as his ability to enjoy his hobbies, such as playing ball and fishing. (Tr. 35—36). He testified that he has difficulty putting his pants on and tying his shoes. (Tr. 36). He does not cook, but relies on his sister and girlfriend to cook for him. (Tr. 36-37). Gamble reports, however, that he does engage in many household activities, such as mowing the grass, watching television, and talking with friends and family. (Tr. 19). He also manages his own finances. (Tr. 19).

Gamble was seen by Dr. Brad Adkins for a psychological exam on October 14, 2010. (Tr. 291—96). Gamble's full scale IQ was 67 on the Wechsler Adult Intelligence Test, indicating "that his overall intellectual abilities are in the Extremely Low range compared to the normative population." (Tr. 295). Dr. Adkins noted that Gamble suffers from Generalized Anxiety Disorder, a history of alcohol abuse, and has borderline intellectual functioning.

3

His Global Assessment of Functioning (GAF) was 42. (Tr. 295).

Dr. W. R. Stauffer examined Gamble on November 10, 2010 as an examining consultant. On exam, Gamble was noted to keep closing his left eye due to light sensitivity. Dr. Stauffer diagnosed the claimant with chronic back pain, history of degenerative disease, multiple compression fractures, bilateral knee pain probably secondary to osteoarthritis, blindness in the left eye, probable COPD, and hypertension, not controlled. (Tr. 298-304).

On April 15, 2011, Dr. Jerry Brackett evaluated Gamble on referral from his attorney. (Tr. 318—23). Dr. Brackett noted that Gamble exhibited weakness in his lower extremities, and exhibited tenderness in both knees. (Tr. 318).

East Kentucky Psychological Services evaluated the claimant on October 13, 2011. This time Gamble received a 69 on the Wechsler Adult Intelligence Test. At 60, Gamble's current GAF score assessed by Mr. Pack was higher than that previously assessed by Dr. Adkins. (Tr. 327-335).

**II. OVERVIEW OF THE ALJ HEARING**

In determining whether a claimant is disabled or not, the ALJ conducts a five-step analysis:

> 1.) Is the individual engaging in substantial gainful activity? If the individual is engaging in substantial gainful activity, the individual is not disabled, regardless of the claimant's medical condition.
>
> 2.) Does the individual have a severe impairment? If not, the individual is not disabled. If so, proceed to step 3.
>
> 3.) Does the individual's impairment(s) meet or equal the severity of an impairment listed in appendix 1, subpart P of part 404 of the Social Security Regulations? If so, the individual is disabled. If not, proceed to step 4.
>
> 4.) Does the individual's impairment(s) prevent him or her from doing his or her past relevant work, considering his or her residual functioning capacity? If not, the individual is not disabled, if so, proceed to step 5.
>
> 5.) Does the individual's impairment(s) prevent him or her from performing other work that exists in the national economy, considering his or her residual functioning capacity together with the "vocational factors" of age, education, and work experience? If so, the individual is disabled. If not, the individual is not disabled.

*See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir.

1994)(citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)).

**III. ALJ's findings**

The ALJ applied the five-step sequential evaluation process found at 20 C.F.R. § 416.920(a)(4) (2013) in his administrative decision. The ALJ found Gamble has the following "severe" impairments pursuant to 20 C.F.R. § 416.920(c): degenerative disc disease of the lumbar spine; history of compression fracture of T12; degenerative joint disease; blind in left eye; history of bronchitis; hypertension; headaches; generalized anxiety disorder; pain disorder; borderline intellectual functioning; and alcohol abuse. (Tr. 14, Finding No. 2). The ALJ found that Gamble did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16, Finding No. 3).

The ALJ determined that Gamble retained the residual functional capacity (RFC) to perform a limited range of light work. (Tr. 18, Finding No. 4). The ALJ determined that Gamble could not perform his past relevant work. (Tr. 20, Finding No. 5). At step five of the sequential evaluation, 20 C.F.R. § 416.920(a)(4)(v), the ALJ used Medical-Vocational rule 204.00, 20 C.F.R. pt. 404, subpt.

P, app. 2, rule 204.00, as a framework for decision-making, and, in conjunction with a Vocational Expert's (VE) testimony, the ALJ found that there were other jobs existing in significant numbers in the national economy that Gamble could perform. (Tr. 20-22, Findings 6-9). Thus, the ALJ found that Gamble is not disabled. (Tr. 22, Finding No. 10).

## IV. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, *see* 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citing *Kirk*

*v. Sec. of Health and Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)).

**V. Analysis**

Gamble argues that the Commissioner's determination should be reversed for three reasons. Gamble's first and second arguments are that the ALJ erred by posing hypothetical questions to the VE that failed to properly consider the severity of Gamble's left eye blindness and headaches. Gamble's third argument is that the ALJ erred by not specifically addressing whether Gamble met or equaled Listing 12.05C. For the reasons described herein, this Court will affirm the Commissioner's determination.

First, Gamble argues that because the ALJ found that Gamble's blindness in his left eye was a "severe" impairment, it was error for the ALJ to only refer to "some mild field of visual problems" in the ALJ's hypothetical to the VE. Gamble's argument is unpersuasive.

Contrary to Gamble's argument, the ALJ's determination that Gamble's blindness is a severe impairment is not inconsistent with the ALJ's hypothetical. An impairment must result from "anatomical, physiological or psychological abnormalities" and is categorized as "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities. . . ." 20

C.F.R. §§ 404.1508, 404.1520(c). Thus, the existence of an impairment, or a finding that an impairment is categorized as "severe," is not indicative of the level of limitation caused by the impairment or Gamble's ability to work within that range of limitations. The Residual Functional Capacity (RFC) assessment, on the other hand, addresses the functional limitations and restrictions resulting from Gamble's impairment. *See* Social Security Ruling [SSR] 96-8P, 1996 WL 374184, at *1. The ALJ accurately questioned the VE based on hypotheticals representing the ALJ's determination of the RFC. Thus, Gamble's argument is, essentially, that the ALJ erred in determining his RFC. However, Gamble's RFC is supported by substantial evidence.

The ALJ found that Gamble:

> can occasionally push or pull. He can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. He must avoid concentrated exposure to excessive vibration; irritants such as fumes, odors, dust, gases, and poorly ventilated areas; and hazards such as moving machinery and unprotected heights. *The claimant is blind in the left eye, which results in mild field of vision problems.* He is limited to one- or two-step tasks that are simple, routine, and repetitive and that can be explained verbally instead of in writing. He can only work in a low-stress job (defined as a job that requires only occasional decision making and has only occasional changes in the work setting). He can have occasional interaction with the public and co-workers.

9

(Tr. 18) (emphasis added). Gamble testified that he had surgery in his left eye and that "it went out" (Tr. 18, 31). Gamble stated that light bothers his eye and that fluid drains from it all the time. (Tr. 31-32).

The medical record submitted to the ALJ does not include any medical records regarding Gamble's eye surgery, any treatment for lost vision in the left eye, or any consistent headache treatment. In October 2009, Gamble went to the emergency department with multiple complaints, including a "knot" on his face near the left eye and a headache. (Tr. 260). Gamble was diagnosed with bronchitis and a cyst and was prescribed medications. (Tr. 262, 273). His head CT scan was normal. (Tr. 266). There do not appear to be any other treatment records relating to his eye or headaches in the administrative record.

The consultative exams confirmed that Gamble has vision problems in his left eye, but Gamble did not complain of headaches to the consultative examiners. Gamble did not complain of headaches to Dr. Stauffer during his consultative exam on November 10, 2010. (Tr. 298). While Gamble reported that, following surgery, he could only see light in his left eye, Dr. Stauffer noted that Gamble "really [had] not seen a physician about this." (Tr. 299). Dr. Stauffer found Gamble's visual acuity to be

20/200 in his left eye and 20/30 in both eyes without glasses. (Tr. 300). Dr. Stauffer concluded Gamble would have mild field of vision limitations due to his left eye. (Tr. 301). The ALJ gave great weight to Dr. Stauffer's opinion, noting that Gamble had "limited field of vision in the left eye." (Tr. 19). Similarly, in April 2011, Dr. Brackett noted "some visual defect" in Gamble's left eye (Tr. 318). Gamble did not complain to Dr. Brackett about headaches (Tr. 318).

Moreover, in his brief, Gamble does not point to any evidence in the record indicating that his vision requires more restrictive limitations than RFC assigned by the ALJ, specifically, that he had "mild field of visual problems." The medical evidence did not reflect any treatment for Gamble's vision problems and no treating physician assessed any functional limitations connected with Gamble's vision loss. The ALJ properly relied on Dr. Stauffer's finding that Gamble had mild field of vision problems (Tr. 18, 301). The ALJ's RFC assessment was supported by substantial evidence, consistent with the ALJ's duties under 20 C.F.R. § 416.945, and Gamble has failed to establish that he has additional limitations related to his vision beyond those included in the RFC and hypotheticals to the VE.

Second, Gamble argues that he should be found disabled because the VE found no jobs for the ALJ's hypothetical containing a limitation due to Gamble's headaches. Specifically, the ALJ asked if there would be any jobs for an individual with Gamble's RFC described above and who "would have severe migraine headaches which would cause the individual to be off-task at least 30 percent of the work week." In response to that hypothetical, the VE found that an individual with those restrictions would "be unable to sustain or maintain competitive employment." (Tr. 43).

In finding that headaches were a severe impairment, the ALJ gave great deference to Gamble's subjective complaints. He stated:

> The claimant has alleged headaches. A CT of the Head (sic), taken in October 2009, was within normal limits (Exhibit 1F, pg. 12). There are no recent complaints of headaches and he has no treatment for this condition. Therefore, I have granted him the maximum benefit of the doubt, and find that he suffers from severe headaches.

(Tr. 15). At the third stage, however, the ALJ did not find Gamble credible to the extent that his assertions were inconsistent with the RFC, which did not include any limitations due to Gamble's headaches. An ALJ "may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *See Casey v. Sec'y of*

*Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The classification of Gamble's headaches as a severe impairment is not dispositive of either the RFC or the VE hypothetical and this Court finds that Gamble's RFC was supported by sufficient evidence. *Howard v. Comm. Of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) ("[T]he RFC is meant to describe the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from . . . ."); *see*, *e.g.*, *Maziarz v. Sec. of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)(noting that severe and non-severe impairments are considered as part of the RFC and that the designation of severe or non-severe is not determinative of the RFC findings); *see also* 20 C.F.R. § 404.1545(e).

Gamble does not point to any evidence, nor does the Court find any evidence in the record, indicating that Gamble suffers from "severe migraine headaches which would case the individual to be off task at least 30 percent of the work week." (Tr. 43). Gamble testified that the problems with the vision in his left eye caused him to have headaches; however, when asked how often he has headaches, Gamble responded: "Well, I'll have migraines. I haven't had them for a long time though. This sure bothers me a lot. It's aggravating mostly." (Tr. 32). As previously

noted, Gamble complained of headaches during an emergency room visit; however, the record reflects no further treatment for headaches. Gamble did not mention his headaches to either consultative examiner that evaluated his physical condition. (Tr. 298-301, 318-23). The only evidence regarding Gamble's headaches are his own reports, and in his testimony, he minimized the severity and frequency of any such headaches. The ALJ, therefore, properly omitted limitations in Gamble's RFC related to these headaches and the hypothetical to the VE.

After determining Gamble's RFC, the ALJ posed a question to the VE that included all the limitations related to Gamble's vision and his headaches which the ALJ found to be credible. (Tr. 41). The ALJ relied on the VE's response to the ALJ's hypothetical that included only those limitations supported by substantial evidence. (Tr. 20-22); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) (stating that "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). The ALJ, therefore, properly relied on the VE's testimony to find that Gamble could perform other work. *See Foster v. Halter*, 279 F.3d 348, 356-57 (6th Cir. 2001).

Third, Gamble argued that the ALJ erred by not addressing Listing 12.05C of Appendix I to Subpart P of 20 C.F.R. § 404 and that, based on the record, Gamble meets or equals the listing. "Because satisfying the listings during the third step yields an automatic determination of disability based on medical findings . . . the evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Comm'r of Soc. Sec.*, No. 13-5841, 552 F. App'x 533, 539 (6th Cir. 2014) (unpublished) (citations omitted).

As an initial matter, the Court notes that Gamble did not raise this argument before the ALJ or the Appeals Council. (Tr. 46—47, 253). Gamble bears the burden of showing that his impairments were equal or equivalent to a listed impairment. *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (rejecting claimant's argument that ALJ had to specifically discuss listing, where claimant did not argue he had a listed impairment at his hearing and ALJ expressly found claimant did not have an impairment or combination of impairments that was equal or equivalent to any listed impairment). Considering Gamble's failure to argue that he met Listing 12.05C at the hearing, and his failure to point to specific evidence in

support of his contention that he met the Listing, the ALJ did not err when he did not make specific findings regarding Listing 12.05C. *Malone*, 507 F. App'x at 472.

In his opinion, the ALJ concluded that Gamble "does not have an impairment or combination of impairments equal in severity to any listed impairment" and specifically noted that 12.05C had been considered and that "the evidence fails to establish the presence" of the requisite criteria. (Tr. 16-17). "[W]here no argument is made for a finding of disability under a Listed Impairment, it is sufficient if, having reviewed the record in its entirety, the ALJ finds summarily that no medical evidence supports any Listed Impairment, and concludes adversely to the claimant at the third step." *Hartman v. Astrue,* 3:12-cv-48, 2013 WL 4011074, at *4 (W.D.Ky August 5, 2013). Nonetheless, the Court has reviewed the record and finds that Gamble does not meet the 12.05C criteria.

Section 12.05 regarding intellectual disability provides as follows:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in both A and B are

> satisfied, or when the requirements in both A and C are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. § 404, Subpart P, Appendix 1, 12.05C.

Listing 12.05 requires that the individual's significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifest during the developmental period. *See* 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.05. While Gamble's IQ testing would satisfy one element of Listing 12.05C, he has not cited evidence in support of the remaining factors.

Gamble did not cite to any evidence in the record suggesting that his alleged subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before he reached the age of 22. *See* 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.05; *see also Foster*, 279 F.3d at 354. While Gamble alleges in his brief that he was in special education classes, he does not include a citation to the record and the Court's review of the record reveals no school records supporting this fact. (Tr. 211-12, 252). In fact, Gamble specifically denied being in special education classes in a disability report completed

as part of his claim. (Tr. 211-12, 252). Gamble's inability to read or write does not establish that he meets the criteria for 12.05C. The consultative examiners consistently found that Gamble had borderline intellectual functioning.

The record, therefore, fails to establish that Gamble had significantly subaverage general intellectual functioning with adaptive functioning initially manifested during the developmental period, as required to meet Listing 12.05C. At most, the record establishes that Gamble left school before completing the 8th grade, but there is no indication that Gamble left school due to intellectual deficiencies. (Tr. 211); s*ee Eddy v. Comm'r of Soc. Sec.*, 506 F. App'x 508, 510 (6th Cir. 2012) (finding evidence that the claimant attended special education classes and left school after the 8th grade did not undermine the ALJ's finding that the claimant did not meet Listing 12.05C because the claimant "did not show that her enrollment in special education classes or her failure to continue her schooling were due to her having significantly subaverage general intellectual functioning.").

For the foregoing reasons, the decision of the Commissioner will be affirmed and a separate judgment entered.

Accordingly, **IT IS ORDERED**:

(1) that the Plaintiff's Motion for Summary Judgment [DE 10] is **DENIED**; and

(2) that the Defendant's Motion for Summary Judgment [DE 11] is **GRANTED**.

This the 5th day of June, 2014.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge